IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | CRIMINAL NO. 12-16J |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| TARA FINLEY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.     Introduction**

On May 15, 2012, the government filed a three-count indictment against the Defendant, charging her with one count of conspiracy to commit arson and mail fraud, and with two counts of mail fraud.  Before the Court is a motion in limine, which seeks to exclude certain testimony of government witnesses at trial (ECF No. 88).  For the reasons explained below, the motion is denied.

**II.    Background**

The government charges that Defendant and a person known to the grand jury as KF conspired to set fire to the Cozy Acres furniture store (the "building") located at 2906 Oklahoma Salem Road, in Dubois, Pennsylvania.  At all times relevant to the indictment, the Westfield Insurance Company ("Westfield") provided insurance coverage to Defendant for the building and for the personal property contents of the building.

According to the indictment, KF allegedly set fire to the building on the morning of April 11, 2007.  The indictment further alleges that, as part of the conspiracy, Defendant and KF provided false information to law enforcement officers and to Westfield regarding

the cause of the fire. Westfield eventually paid in excess of $2 million on an insurance claim made by Defendant in connection with the fire. The indictment also alleges that, as part of a fraudulent scheme to obtain insurance proceeds from Westfield, Defendant caused to be delivered at least two letters through the United States mail.

III. **Applicable Law**

The instant motion raises evidentiary issues under Federal Rules of Evidence 401, 402, 403, 602, and 802. The Court will first review the offenses contained in the indictment and the pertinent rules of evidence.

A. **Elements of the alleged crimes**

Defendant is charged with conspiracy, in violation of 18 U.S.C. § 371, and mail fraud, in violation of 18 U.S.C. § 1341. With respect to the conspiracy charge, "the government must show: (1) the existence of an agreement to achieve an unlawful objective; (2) the defendant's knowing and voluntary participation in the conspiracy; and (3) the commission of an overt act in furtherance of the conspiracy." *United States v. Rigas*, 605 F.3d 194, 206 (3d Cir. 2010) (quotation marks and citation omitted).

The conspiracy charge involves an alleged agreement to violate the federal arson statute and the mail fraud statute. The federal arson statute states, in material part, that "[w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire . . . any building, vehicle, or other real or personal property used in . . . any activity affecting interstate or foreign commerce[,] shall be imprisoned for not less than 5 years

2

and not more than 20 years, fined under this title, or both . . ." 18 U.S.C. § 844(i). "The elements of traditional mail fraud, in which money or property is the object of the fraud, are: (1) a scheme or artifice to defraud by means of a materially false or fraudulent pretense; (2) participation by the defendant with specific intent to defraud; and (3) use of the mail in furtherance of the scheme." *United States v. Bryant*, 655 F.3d 232, 248 (3d Cir. 2011).

### B. Applicable rules of evidence

Federal Rule of Evidence 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Federal Rule of Evidence 402 states that relevant evidence is admissible unless the Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 402. Although evidence must be relevant to be admissible, Rule 401 does not set a high standard for admissibility. *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 109–10 (3d Cir. 1999) (citation omitted). The Third Circuit has stated:

> "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Because the rule makes evidence relevant "if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has *no* tendency to prove the fact."

*Blancha v. Raymark Indus.*, 972 F.2d 507, 514 (3d Cir. 1992) (emphasis in original) (quoting 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5166, at 74 n.47 (1978)).

Under Federal Rule of Evidence 403, relevant evidence is inadmissible "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 403 mandates a balancing test, "requiring sensitivity on the part of the trial court to the subtleties of the particular situation." *United States v. Vosburgh*, 602 F.3d 512, 537 (3d Cir. 2010). Relevant here, the advisory notes to Rule 403 state that "unfair prejudice" means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee note; *see Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) ("Of course, 'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'").

In addition to these aforementioned rules, "a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. "Evidence to prove personal knowledge may consist of the witness's own testimony." *Id.* Similar to the relevancy requirement of Rule 401, the personal knowledge requirement of Rule 602 creates a low threshold for admissibility. *United States v. Gerard*, 507 Fed. App'x 218, 222 (3d Cir. 2012). A judge should admit witness testimony "if the jury could reasonably find that the witness perceived the event." *Id.* (citing *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990)).

Notwithstanding the foregoing rules, hearsay evidence is inadmissible at trial unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 802. Hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

Exceptions to the hearsay rule abound. For purposes of the instant motion, the hearsay exception under Federal Rule of Evidence 804(b)(3) is relevant. The rule provides that a hearsay statement is admissible if the declarant is unavailable as a witness and

> (A) a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Fed. R. Evid. 804(b)(3). For an out-of-court statement to be admissible under this exception, the statement must be "sufficiently against [the declarant's interest] so as to be deemed reliable." *United States v. Moses*, 148 F.3d 277, 280 (3d Cir. 1998) (quoting *Williamson v. United States*, 512 U.S. 594, 603–04 (1994)). A court determines if a statement is sufficiently against the declarant's interest by assessing the statement in context, and in view of the surrounding circumstances. *See United States v. Moses*, 148 F.3d 277, 280 (3d Cir. 1998) (citing *Williamson*, 512 U.S. at 603–04).

5

**IV.	Discussion**

Defendant seeks to exclude five general categories of witness testimony at trial. These categories include:

> (1) claims that Ms. Finley said she would cause Cozy Acres to burn down or wished that Cozy Acres would burn down;
>
> (2) statements by April Young that she saw plastic tote boxes containing Cozy Acre records in the Finleys' home shortly before the fire and Anthony Diblasio's claim that on the day before the fire, filing cabinets were no longer in the Cozy Acres office;
>
> (3) statements of firefighters that when they arrived at the Cozy Acres complex in response to the fire alarm, they smelled a strong odor of gasoline;
>
> (4) Dawn Shaffer's claims that employees of Cozy Acres did not receive 1099 tax forms for work during the Sunday Sale and Pennsylvania sales taxes were not submitted to the Commonwealth; and
>
> (5) statements allegedly made by Keven Finley admitting or suggesting that he admitted setting fire to Cozy Acres.

(ECF No. 88 at 2). The Court will address each category of testimony in turn.[1]

**A.	Defendant's alleged statements regarding a possible fire at Cozy Acres**

The government intends to offer testimony from witnesses who allegedly heard Defendant say that she either wanted Cozy Acres to burn, or that she should burn it down herself. The government states:

---

[1] The government no longer intends to offer testimony of Dawn Shaffer regarding Defendant's alleged failure to pay Pennsylvania sales tax and to provide 1099 tax forms. (ECF No. 98 at 10). Therefore, the Court need not address the fourth category of evidence at this time, and the motion in limine is denied as moot with respect to these issues.

**Brandy Gardner** – Ms. Gardner will testify that she worked at Cozy Acres on two separate occasions. She worked there from April of 2004 to November of 2004, and then again from September of 2005 to December of 2005. Ms. Gardner recalled hearing the defendant on one occasion, while frustrated regarding the financial problems at Cozy Acres, tell another employee to "just burn the place down". On a different occasion, Ms. Gardner overheard the defendant make a similar statement, this time in jest, to another employee.

**Christina Hibbard** – Ms. Hibbard will testify that she was employed at Cozy Acres from July of 2004 to March of 2007. She recalls the defendant stating, on one occasion, that she "could" or "should" burn Cozy Acres.

**Theresa Marsh** – Ms. Marsh will testify that she and the defendant were friends during 2005 and 2006, during which time the defendant made statements which implied that having a fire at insured properties could resolve financial difficulties. On one occasion, the defendant talked about the idea of burning rental property which the defendant owned in or near Erie, Pennsylvania. On another occasion, the defendant told Ms. Marsh that she (the defendant) had a substantial amount of insurance covering the inventory at Cozy Acres, and that a fire at Cozy Acres could help their financial situation.

**Dawn Shaffer** – Ms. Shaffer was employed at Cozy Acres from August of 2004 to January of 2007. Approximately fifteen months prior to her leaving Cozy Acres, Ms. Shaffer heard the defendant state, in response to an employee's suggestion that the IRS might audit Cozy Acres, that she (the defendant) would "burn the ------ place down" before permitting an audit of Cozy Acres.

(ECF No. 98 at 3–4). Defendant argues that the Court should exclude this testimony under Federal Rules of Evidence 401, 402, and 403 because the statements "are vague, some characterized as being made in jest, and some are remote in time prior to the fire." (ECF No. 88 at 7). Even if these statements are relevant, Defendant argues that the probative value of these statements is substantially outweighed by the risk of causing unfair prejudice, misleading a jury, and being needlessly cumulative.

After reviewing the indictment in this case, the instant motion in limine, and the government's response thereto, the Court finds that the testimony is highly probative with respect to Defendant's state of mind. The Court further finds that Defendant is at-

7

tacking the weight of the testimony, not its admissibility. In addition, the probative value of the testimony is not substantially outweighed by the risk of unfair prejudice. "[T]he . . . prejudice against which the law guards [is] . . . *unfair* prejudice— . . . prejudice of the sort which cloud[s] impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found." *Goodman v. Pennsylvania Tpk. Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002) (emphasis in original) (quoting *Wagenmann v. Adams*, 829 F.2d 196, 217 (1st Cir. 1987)). Although the testimony is prejudicial to Defendant's case, it does not create any danger of *unfair* prejudice, and the evidence is not unnecessarily cumulative or misleading.

The Court notes that, as of the pretrial conference held on August 22, 2014, the government no longer intends to offer testimony from Theresa Marsh to the extent Marsh allegedly heard Defendant say that she was considering the idea of burning property she owned in Erie, Pennsylvania. (ECF No. 104). Defendant's motion in limine is denied as moot on this point. The motion is otherwise denied to the extent it seeks to exclude alleged statements made by Defendant regarding her desire to set fire to Cozy Acres, the extent of insurance coverage on Cozy Acres, and the possibility of collecting insurance proceeds as a result of a fire at Cozy Acres.

Within this first category of evidence, Defendant further seeks to exclude testimony of Dan Phlegar. Phlegar was a self-employed contractor who worked at Cozy Acres for one week in 2007. According to the government, Phlegar will testify that, when he offered to repair a leaky pipe at Cozy Acres, Defendant told him not to worry about the leak

8

because Cozy Acres would soon be going out of business. (ECF No. 88 at 6; ECF No. 98 at 6). The Court concludes that this testimony is also highly probative as to Defendant's state of mind and that the testimony is not unfairly prejudicial or misleading. Accordingly, Defendant's motion in limine is denied with respect to this issue.

### B. Testimony regarding the location of business files and cabinets

The government also intends to offer testimony from two witnesses who allegedly observed the placement or relocation of business records of Cozy Acres shortly before the fire. With respect to these witnesses, the government states:

> April Young will testify that she was employed by the Finleys to be a nanny to the Finley children in 2007. In that capacity, Ms. Young spent many hours at the Finley residence. A few days prior to the fire, while doing some cleaning at the Finley residence, Ms. Young observed some plastic "tote" containers in one of the bedrooms. She had never seen these at the residence before that date, so she opened them in order to see what was inside. When she opened them, she observed numerous business records pertaining to Cozy Acres.
>
> Tony DiBlasio was employed by a local newspaper which provided advertisements for Cozy Acres. . . . Mr. DiBlasio will testify that, prior to the fire, he had visited Cozy Acres on approximately six occasions in an effort to collect overdue payments from Cozy Acres. During those visits, he observed that Cozy Acres maintained several file cabinets on the premises. He believed those cabinets contained business records because they were located in the office area, and because he witnessed an employee of Cozy Acres go to those cabinets to retrieve business records. On the day immediately preceding the fire, Mr. DiBlasio visited Cozy Acres in an effort to collect a payment from them. During that visit, he was told by an employee that the defendant was not on the premises and, therefore, he could not be paid on that day. Mr. DiBlasio noticed that the above-referenced cabinets were no longer in the office area, where he had seen them previously.

(ECF No. 98 at 7–8). Defendant argues that this evidence is irrelevant as to whether Defendant engaged in conspiracy to commit arson or mail fraud. Defendant further argues that DiBlasio does not have personal knowledge regarding the location of the Cozy Acres

business records. Finally, Defendant argues that any probative value of this testimony would be substantially outweighed by the risk of unfair prejudice.

The Court finds that this testimony is admissible, and the motion in limine is denied with respect to these issues. The information is probative as evidence of Defendant's alleged planning before the fire. In other words, the government intends to show that Defendant removed business records from Cozy Acres for the purpose of using the records in connection with Defendant's post-fire insurance claim. Such testimony is relevant on that point, and the evidence is not unfairly prejudicial or misleading.

In arguing that the testimony is inadmissible, Defendant again muddies the distinction between weight and admissibility of the evidence. The weight of the evidence goes to the issue of sufficiency, not admissibility. Of course, Defendant can argue that the testimony does not show that Defendant conspired to burn down Cozy Acres, and a reasonable jury could discount the testimony in its entirety. Nonetheless, the issue is within the province of the jury and will not be excluded under Rules 401, 402, and 403.

To the extent Defendant disputes the testimony of DiBlasio under Rule 602, the Court finds this argument unpersuasive. Rule 602 "excludes testimony concerning matter the witness did not observe or had no opportunity to observe." *United States v. Lyon*, 567 F.2d 777, 783–84 (8th Cir. 1977), *cert. denied*, 435 U.S. 918 (1978) (citing McCormick on Evidence § 10 (2d ed. 1972)); *see also United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990) ("Testimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event

that he testifies about.") (citation omitted)).  Here, DiBlasio allegedly observed the office area and filing cabinets on several occasions, he witnessed an employee obtain business records from these cabinets and, on the day before the fire, he observed that the cabinets were missing from the office area.  Accordingly, such testimony would be sufficient to satisfy the relatively low threshold for admissibility under Rule 602.

### C. Testimony of firefighters regarding the odor of gasoline

The next issue before the Court is whether the government should be able to offer testimony of several firefighters who allegedly smelled gasoline at the scene of the fire:

> The government intends to call four or five firefighters who . . . responded to the fire. When that fire truck pulled up near the "addition" portion of Cozy Acres, all five firefighters got out of the truck.  As soon as they got out, all five firefighters smelled gasoline.  The government intends to introduce this evidence . . . [to show] that the fire was intentionally set, and not an accident.  In particular, the government intends to argue that Keven Finley used gasoline to set this fire.  In addition to the testimony regarding the gasoline odor detected by the firefighters, the government also intends to offer testimony that two gasoline containers normally stored at Cozy Acres were never found after the fire.

(ECF No. 98 at 8).  Defendant states that the government's fire expert will testify that the cause of the fire is undetermined and that the forensic testing of debris found at the site does not reveal any trace evidence of gasoline.  Because the presence of gasoline appears to be inconclusive, Defendant argues that the testimony of the firefighters would be unfairly prejudicial and would create the risk of misleading a jury.

The Court finds that the testimony is highly probative on the issue of whether the fire was intentionally set.  The Court further concludes that these firefighters need not qualify as experts to describe their observations to a jury.  "[T]he distinction between lay

and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Ebron*, 683 F.3d 105, 136–37 (5th Cir. 2012), *cert. denied*, 134 S. Ct. 512 (2013) (internal quotations and citation omitted). Lastly, the Court concludes that the evidence is not unfairly prejudicial or misleading. Defendant can certainly argue that the forensics, among other evidence, directly refutes the observations made by the firefighters. Accordingly, the motion in limine is denied with respect to this issue.

### D. Keven Finley's alleged statements regarding the fire

The final issue before the Court is whether the government should be permitted to offer testimony of Theresa Marsh, to the extent Marsh allegedly heard Keven Finley admit or suggest that he intentionally set fire to Cozy Acres. The government states:

> The conversation in question took place at Ms. Marsh's place of employment, when Keven Finley happened to be there as a customer. The conversation began with Ms. Marsh informing Keven Finley that some investigators had questioned her regarding information which she might have pertaining to the fire. Upon hearing this from Ms. Marsh, Keven Finley told her that she did not have to talk to any investigators regarding the fire. That was the point in the conversation when Ms. Marsh told Keven Finley that she did not want to think that he would be so stupid to put his children at risk, prompting Keven Finley to reply, "I'd call it brilliant."

(ECF No. 98 at 10–11). The government concedes that Keven Finley's statements are hearsay, but argues that these statements fit within the "statement against interest" exception to the hearsay rule. Fed. R. Evid. 804(b)(3).

Federal Rule of Evidence 804(b)(3) provides that a hearsay statement is admissible if the proponent of the evidence establishes the following three elements: (1) the declar-

ant is unavailable; (2) "a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to . . . expose the declarant to civil or criminal liability"; and (3) the "corroborating circumstances" indicate the trustworthiness of the statement, if the statement is "offered in a criminal case as one that tends to expose the declarant to criminal liability." Fed. R. Evid. 804(b)(3). The parties do not dispute that Keven Finley is "unavailable" for purposes of Rule 804. (ECF No. 106). Thus, the Court need only consider the second and third elements.

The Court finds that Keven Finley's alleged statements were sufficiently against his interest to satisfy Rule 803(b)(3)(A). The rationale behind Rule 804(b)(3) is that "persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true." Fed. R. Evid. 804 advisory committee note (citation omitted). When assessing the statements, the court must consider the mental state of a "reasonable person." *United States v. Mitchell*, 175 F. App'x 524, 527 (3d Cir. 2006). Here, Keven Finley's statements were self-inculpatory, and it is unlikely that a reasonable person would make such statements.

The Court also finds that the corroborating circumstances indicate the trustworthiness of these alleged statements. Fed. R. Evid. 804(b)(3)(B). There is no reason to suggest that these alleged statements were taken out of context, or that these alleged statements were somehow intended to deflect blame or criminal liability. *See United States v. Berrios*, 676 F.3d 118, 129 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 982 (2013). Not only did

13

Keven Finley allegedly tell Marsh that she need not talk to investigators about the fire, he allegedly told her that his actions were "brilliant." Such statements fit within the confines of Rule 804(b)(3) and are thus admissible at trial. The motion in limine is denied with respect to this fifth category of evidence.

    An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | CRIMINAL NO. 12-16J |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| TARA FINLEY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 5th day of September, 2014, upon consideration of the motion in limine (ECF No. 88) filed by Defendant Tara Finley, and upon further consideration of the government's opposition thereto, and in accordance with the foregoing memorandum opinion of this Court, it is hereby ORDERED that the motion is DENIED.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE